**PEM LAW LLP**
Rajiv D. Parikh, Esq.
Kathleen Barnett Einhorn, Esq.
Julia Livingston, Esq.
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jlivingston@pemlawfirm.com

*Attorneys for Plaintiffs*

ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN,

Plaintiffs,

v.

DELUXE CORPORATION, DATAMYX LLC, DELUXE FINANCIAL SERVICES, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,

Defendants.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Action No. 1:24-cv-04080-HB

**CIVIL ACTION**

**FIRST AMENDED COMPLAINT**

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan (collectively, "Plaintiffs"), by and through their

undersigned counsel, hereby submit this First Amended Complaint against Defendants and state as follows:

## INTRODUCTION

1. In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2. This First Amended Complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3. The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve. Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4. With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family

members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

5. Plaintiffs commenced this action on February 8, 2024 by filing a Complaint in the Superior Court of New Jersey, Law Division, Bergen County, Docket No. BER-L-000821-24. On March 21, 2024, Defendant Deluxe Corporation ("Deluxe") removed the action to this Court, where it was assigned Civil Action No. 1:24-cv-04080-HB.

6. Plaintiffs now file this First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) to (a) add Datamyx LLC ("Datamyx") and Deluxe Financial Services, LLC ("Deluxe Financial Services"), each a wholly owned subsidiary of Deluxe, as Defendants based on their disclosure or re-disclosure on the Internet, or otherwise making available, of the protected information of the Individual Plaintiffs and Covered Persons; (b) include additional Covered Persons who have assigned their claims under Daniel's Law to Atlas, and update the number of Covered Persons accordingly; (c) identify an additional website, datamyx.com, through which Defendants disclose protected information; and (d) conform the jurisdictional, venue, and related allegations to this action's posture following its removal to this Court.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

7. In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents. By the time his mother, a Judge,

came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

8. During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

9. Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

**New Jersey Passes Daniel's Law in 2020**

10. In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

11. Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

12. Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

13. The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers. It allowed federal judges to redact their personal information displayed on federal government internet sites.

14. The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.

**Violence Against Police Officers and Judges Has Not Stopped**

15. Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

16. More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6] The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

## THE PARTIES

**The Individual Plaintiffs**

17. Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey. Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state. Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence. In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified. Officer Doe-1 lives in the home with her spouse and their young child. Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside. Further investigation revealed that the criminal

---

[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).

[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.

[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

18. Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include working in her correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

19. Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he

received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to burn down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

20. Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

21. The resulting video footage was selectively edited and posted to YouTube. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

22. One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

23. Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

24. Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

25. Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently serves as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm.

26. Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections. Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole. During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service. Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility. These attempts and the risks posed by such information being accessible on the

Internet is a frequent topic of discussion and concern among correctional officers and their family members. Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**<u>Plaintiff Atlas and its Assignors</u>**

27. Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

28. As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 24,889 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

29. The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

30. As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites, mailing lists or through other methods of disclosure.

31. Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required

under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

32. In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

33. Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons. Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

34. Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a Covered Person under Daniel's Law. Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:




35. AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:




36. Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to. On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices. If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.




37. Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:

AtlasMail

Compose

Search in Mail

ALL MAIL | INBOX | SENT | ASSIGNMENT CONFIRMATIONS

| | | |
|---|---|---|
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:40 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |

< 1 2 3 4 5 ... 16 >

**Redaction/Nondisclosure Request Confirmation**

**To** john.doe23@atlasmail.com
**From** privacy@exampledatabroker.com
**Date** Fri, Jan 26, 2024 8:14 PM

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.

Reply Forward

38. With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons. This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight. Subject to the Confidentiality Order entered March 30, 2026, which requires that Covered Persons' personally identifiable information be designated Confidential and filed under seal, Plaintiffs will provide Defendants, including Datamyx and Deluxe Financial Services, with the written assignments and related information for each Covered Person, including the additional Covered Persons identified in this First Amended Complaint.

**Defendants**

39. Defendant Deluxe is a Minnesota corporation with its principal place of business in Minnesota. Deluxe is an entity that discloses or re-discloses on the Internet or otherwise makes

available the home addresses and/or unpublished home telephone numbers of covered persons. Deluxe is also the parent of Defendants Datamyx LLC and Deluxe Financial Services, LLC, and as set forth below, directs and controls their operations.

40. Defendant Datamyx, which does business as Deluxe Marketing Solutions, is a Delaware limited liability company with its principal place of business in Boca Raton, Florida. Datamyx is a wholly owned subsidiary of Deluxe, which acquired all of its ownership interests in October 2015, and, upon information and belief, Deluxe is its sole member.[8] Datamyx compiles, licenses, and distributes consumer marketing data, including the home addresses and/or unpublished home telephone numbers of New Jersey residents, and is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

41. At all times relevant to the conduct alleged in this First Amended Complaint, including the present, Datamyx was registered to do business in the State of New Jersey, conducts business within the State of New Jersey, and is listed as an active business in good standing in the State of New Jersey.

42. Defendant Deluxe Financial Services is a Minnesota limited liability company with its principal place of business in Minnesota. Deluxe Financial Services is a wholly owned subsidiary of Deluxe and, upon information and belief, Deluxe is its sole member. Deluxe Financial Services is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

43. At all times relevant to the conduct alleged in this First Amended Complaint, including the present, Deluxe Financial Services was registered to do business in the State of New

[8] https://investors.deluxe.com/news-events/press-releases/detail/249/deluxe-acquires-datamyx-llc.

Jersey, conducts business within the State of New Jersey, and is listed as an active business in good standing in the State of New Jersey.

44. Deluxe directs and controls the operations of Datamyx and Deluxe Financial Services. Each is a wholly owned subsidiary of Deluxe whose results Deluxe consolidates in the annual reports it files with the Securities and Exchange Commission, and Deluxe reports the data-driven marketing business that Datamyx conducts as Deluxe's own Data Solutions segment.[9] Deluxe exercises control and decision-making authority over the products, websites, applications, mailing lists, and platforms through which Datamyx and Deluxe Financial Services collect, disclose, and make available the protected information of New Jersey residents, including the Individual Plaintiffs and Covered Persons. Deluxe is therefore responsible, together with Datamyx and Deluxe Financial Services, for the disclosure or re-disclosure on the Internet, or otherwise making available, of the home addresses and/or unpublished home telephone numbers of the Individual Plaintiffs and Covered Persons, and each of Deluxe, Datamyx, and Deluxe Financial Services had an independent obligation under Daniel's Law to cease such disclosure within 10 business days of receipt of the written nondisclosure requests described below.

45. Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this First Amended Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure

---

[9] Deluxe Corp., Form 10-K (FY2024), Item 1 (Data Solutions segment), https://www.sec.gov/Archives/edgar/data/27996/000002799625000051/dlx-20241231.htm, and Ex. 21.1 (Subsidiaries), https://investors.deluxe.com/sec-filings/all-sec-filings/content/0000027996-25-000051/exhibit2111231202410k.htm; Deluxe Corp., Form 8-K, Ex. 99.1 (Oct. 19, 2015), https://www.sec.gov/Archives/edgar/data/27996/000002799615000025/exhibit991101920158-k.htm; Deluxe Corp., Form 10-K (FY2017), Notes to Consolidated Financial Statements ("our Datamyx business"), https://www.sec.gov/Archives/edgar/data/0000027996/000002799618000034/a2017123110-k.htm.

of data and information, and individuals responsible for Defendants' failures to comply with the law.

46. Defendants offer and engage in the disclosure of data and information through one or more websites, applications, or mailing lists, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey. Those websites include:

deluxe.com

datamyx.com

47. In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).

48. Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## **JURISDICTION AND VENUE**

49. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of the State of New Jersey, defendant Deluxe is a Minnesota corporation with its principal place of business in the State of Minnesota, defendant Deluxe Financial Services is a Minnesota limited liability company whose sole member, upon information and belief, is Deluxe, and Defendant Datamyx is a Delaware limited liability company whose sole member, upon information and belief, is Deluxe, and the amount in controversy exceeds $75,000. Defendants

have purposefully directed their business activities toward New Jersey. Defendants have purposefully availed themselves of the privilege of conducting activities within New Jersey.

50. Daniel's Law was enacted to protect New Jersey residents who serve as public servants, and their families (including the Individual Plaintiffs and Covered Persons), from the unwanted disclosure of their protected information by entities, like Defendants.

51. Defendants knowingly and intentionally disclose or re-disclose on the Internet, or otherwise make available, the home addresses and unpublished home telephone numbers of New Jersey residents through affirmative acts and decisions regarding data collection, handling, storage, and disclosure.

52. The disclosure of New Jersey residents' home addresses and unpublished home telephone numbers resulted from Defendants' intentional conduct, including decisions to transmit, publish, or otherwise make that information available, rather than from an inadvertent or purely accidental occurrence.

53. Defendants expressly aimed their conduct at New Jersey by disclosing the home addresses and unpublished home telephone numbers of New Jersey residents, knowing that the affected Covered Persons were located in New Jersey.

54. Defendants knew that the disclosed protected information specifically identified New Jersey residents, including their New Jersey home addresses, and that the disclosure would directly impact individuals within New Jersey.

55. Defendants' conduct was directed at New Jersey because the disclosed protected information enabled direct contact with, and intrusion into the privacy of, New Jersey residents at their homes and via their phones. The disclosed protected information was targeted specifically to New Jersey, and was not a generalized or untargeted release of anonymized data.

56. Defendants knew, or reasonably should have known, that the primary and foreseeable effects of disclosing New Jersey residents' home addresses and/or unpublished home telephone numbers would be felt in New Jersey, where those individuals reside.

57. Defendants understood that their disclosure would expose New Jersey residents to unwanted contact, harassment, safety risks, and invasion of privacy within New Jersey. Defendants knew that any resulting emotional distress, privacy injury, and risk of physical or economic harm would be concentrated in New Jersey, where the affected individuals live.

58. Upon information and belief, Defendants purposefully collected sensitive personal information and other data concerning residents of New Jersey (including, upon information and belief, of Covered Persons) from New Jersey public records; from New Jersey residents themselves; from devices and browsers located in New Jersey that interacted with Defendants' websites, online services, and mobile applications; and/or from businesses that operate within the State of New Jersey.

59. Plaintiffs' claims arise directly out of and relate to Defendants' forum-directed conduct.

60. Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because a substantial part of the events giving rise to the claim occurred in the District of New Jersey.

## FACTS COMMON TO ALL COUNTS

61. As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

62. Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

63. Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

64. This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

65. Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

66. Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

67. As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[10]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:

[10] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>
> (2) punitive damages upon proof of willful or reckless disregard of the law;
>
> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>
> (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d. For the purposes of this section:
>
> …"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

68. Starting on or about January 4, 2024, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

69. For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

## Data Subject Request - Redaction/nondisclosure Request

| | |
|---|---|
| To | privacyprogramoffice@deluxe.com |
| From | Peter Andreyev <[redacted]@atlasmail.com> |
| Date | Sat, Jan 6, 2024 4:41 AM |

Deluxe Corporation
January 6, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Phone:[redacted]

Sincerely,
Peter Andreyev

70. Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individual Plaintiffs and Covered Persons within the time period required by Daniel's Law.

71. Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law. Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

72. All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

73. The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

**COUNT ONE**

**(Daniel's Law)**

74. The allegations of the First Amended Complaint set forth above are included herein as if set forth at length.

75. The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

76. Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

77. As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

78. Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

79. As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

80. As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed

or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individual Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

**PEM LAW LLP**

Dated: October 19, 2026

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq. Kathleen
Barnett Einhorn, Esq.
Julia Livingston, Esq.
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Tel: (973) 577-5500

*Attorneys for Plaintiffs*